IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–03407–MSK–KMT

JAY HARRISON,

    Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LARIMER, COLORADO,
LARIMER COUNTY, COLORADO SHERIFF'S DEPARTMENT,
SHERIFF JUSTIN SMITH, individually and in his official capacity, and
UNDERSHERIFF WILLIAM NELSON, individually and in his official capacity,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This matter is before the court on "Defendants' Motion to Dismiss First Claim for Relief—Liberty Interest Claim Set Out in Plaintiff's Second Amended Complaint" (Doc. No. 17 [Mot. Two], filed March 19, 2012).

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Second Amended Complaint. (Doc. No. 12 [SAC].) Plaintiff brings this employment discrimination case against his former employer, the Larimer County Sheriff's Department ("LCSO"); the Board of County Commissioners of the County of Larimer, Colorado; and Sheriff Justin Smith and Undersheriff William Nelson, in their individual and official capacities. (SAC at 1–3.) Plaintiff states he was initially hired by the

LCSO on April 1, 1996, as a Patrol Deputy and served in that capacity until his termination from employment on March 18, 2011.  (*Id.*, ¶ 7.)  In November 27, 2010, Plaintiff ran for election for the office of Larimer County Colorado Sheriff.  (*Id.*, ¶ 11.)  One of his opponents in the November 2010 election was a fellow deputy sheriff, Defendant Justin Smith, who was elected to the office of Larimer County Sheriff.  (*Id.*, ¶ 12.)  Plaintiff alleges after his election, Defendant Smith "embarked on a campaign to remove Plaintiff from his employment as a deputy sheriff."  (*Id.*, ¶ 13.)

Plaintiff alleges that prior to the election, he had been approached by other deputies within the LCSO who were interested in having Plaintiff assist them in preparing a proposal to the Town of Wellington Board of Trustees to consider the creation of a police force in place of the annual contract for police services with the Larimer County Sheriff's Department.  (*Id.*, ¶ 16.)  As a resident of the Town of Wellington, Plaintiff had communicated via email with the elected Mayor of the Town of Wellington with regard to the idea of a community police force.  (*Id.*, ¶ 17.)  On January 11, 2011, Plaintiff attended a Wellington Town Board Meeting and sat in the audience, but did not participate in the meeting.  (*Id.*, ¶ 18.)

On January 12, 2011 Defendant Smith was sworn in as Larimer County Sheriff.  (*Id.*, ¶ 19.)  On January 31, 2011, Plaintiff was informed by LCSO Sergeant James Disner that Plaintiff was the subject of an internal investigation into allegations of disloyalty, alleged violations of LCSO's standards of conduct, and alleged violations of LCSO rules of conduct regarding Confidential Information and Personal Advantage,as a direct result of attending a Wellington Town Board Meeting, consulting with regard to the starting of a police force in his hometown,

and communicating via e-mail with the Mayor of the Town of Wellington, Colorado. (*Id.*, ¶ 21.) Plaintiff alleges the Internal Affairs Investigations against Plaintiff was initiated and approved by Defendant Smith. (*Id.*, ¶ 23.) Plaintiff also alleges Defendant Nelson was personally involved from the early stages of the Internal Affairs Investigation, when he personally delivered a copy of the audio recording of the January 11, 2011 Town Board Meeting to Sergeant Disner in connection with the investigation. (*Id.*, ¶ 24.)

On February 8, 2011, another Town Board meeting occurred where a proposal was presented by other LCSO deputies regarding the proposed Town Police force. (*Id.*, ¶ 20.) Plaintiff did not attend the meeting. (*Id.*)

On March 18, 2011, Plaintiff was notified in person by Defendant Nelson that he was being terminated for violations of LCSO policies involving his duty of loyalty due to his communications with the Town of Wellington and for his support of the initiative to promote a local police force in the Town of Wellington. (*Id.*., ¶ 27.) Plaintiff alleges Defendant Nelson made findings revoking the appointment of Plaintiff as a deputy sheriff without first providing reasons for the revocation and without providing an opportunity to be heard by the Sheriff, as he alleges is required by Colorado statute and the LCSO's employment handbook. (*Id.*, ¶¶ 26–27, 29.) Plaintiff alleges he requested a hearing before the Disciplinary Hearing Board and appealed the decision to the Defendant Smith. (*Id.*, ¶¶ 30–31.) Plaintiff alleges Defendant Smith personally wrote the final decision terminating Plaintiff's employment and upholding Defendant Nelson's decision. (*Id.* ¶¶ 31–32.)

In his First Claim for Relief[1], Plaintiff alleges Defendant Smith denied due process required by the personnel handbook, Colorado statute, and the Fourteenth AMendment. (*Id.*, ¶ 35.)

## PROCEDURAL HISTORY

Plaintiff filed his initial Complaint on December 30, 2011. (Doc. No. 1.) Pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiff filed an Amended Complaint on January 31, 2012). (Doc. No. 8.) On February 14, 2013, the defendants filed a "Motion to Dismiss First Claim for Relief and Official Capacity Claims Against Defendants Board of County Commissioners, Smith, and Nelson." (Doc. No. 10 [Mot. One].) On March 5, 2012, Plaintiff filed a response to the motion to dismiss (Doc. No. 13 [Resp. Mot. One]) and, pursuant to Fed. R. Civ. 15(a)(1)(B), filed his Second Amended Complaint. (SAC.) On March 19, 2012, Defendant filed a reply to the first motion to dismiss (Doc. No. 16 [Reply Mot. One]) and also filed his second motion to dismiss (Mot. Two), which incorporates by reference the first motion to dismiss (*see id.* at 2). Plaintiff filed a response to the second motion to dismiss on April 6, 2012. (Doc. No. 22 [Resp. Mot. Two].) Defendants did not file a reply. The motion to dismiss is ripe for review and recommendation.

---

[1] Defendants have not moved to dismiss Plaintiff's remaining claims, and this court does not address those claims.

**STANDARD OF REVIEW FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the

allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Iqbal*,129 S. Ct. at 1949 (citation omitted).

## ANALYSIS

### *1.    Fourteenth Amendment Claims*

In his First Amended Complaint, Plaintiff asserted only a Fourteenth Amendment deprivation of property interest claim. (Doc. No. 8-2 at 7–8, ¶¶ 34–40.) In his Second Amended Complaint, Plaintiff expanded his Fourteenth Amendment claim to include a deprivation of liberty interest claim. (SAC at 7–8, ¶¶ 34–41.)

To determine whether a plaintiff was denied due process under the Fourteenth Amendment, the court must determine whether (1) the individual possessed a protected interest

to which due process protection was applicable; and (2) the individual was afforded an appropriate level of process. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) (citation omitted). Constructive discharge from employment is actionable under a due process theory when "an employee possesses a protectable property or liberty interest in his employment." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1245 (10th Cir. 2008) (quotation omitted).

### A.     *Property Interest*

Defendants argue that Plaintiff has failed to establish a property right in continued employment. (Mot. One at 5.) For a property interest in employment to be protectable, there must be "a legitimate expectation in continued employment." *Hesse*, 541 F.3d at 1245 (quotation omitted). "For example, an employee may possess a property interest in public employment if [he] has tenure, a contract for a fixed term, an implied promise of continued employment, or if state law allows dismissal only for cause or its equivalent." *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1251 (10th Cir. 2007). At-will employees lack a property interest in continued employment. *Bishop v. Wood*, 426 U.S. 341, 345 n.8 (1976).

Here, it is undisputed that Plaintiff was an "at-will" employee. (*See* Resp. Mot. One at 6.) Plaintiff nevertheless contends he possessed a property interest in his employment due to Colorado Revised Statute § 30-10-506, which states:

> Each sheriff may appoint as many deputies as the sheriff may think proper and may revoke such appointments at will; except that a sheriff shall adopt personnel policies, including policies for the review of revocation of appointments. Before revoking an appointment of a deputy, the sheriff shall notify the deputy of the

> reason for the proposed revocation and shall give the deputy an opportunity to be heard by the sheriff.

Colo. Rev. Stat. § 30-10-506. Plaintiff concedes that in *McLallen v. Taylor*, Civil Action No. 10-cv-01187-RPM, 2012 WL 502697, at *4 (D. Colo. Feb. 15, 2012), Senior District Judge Richard P. Matsch concluded Colo. Rev. Stat. § 30-10-506 "does not create a property interest within the constitutional protection" because it "contains no substantive restriction on the sheriff's discretion in revoking the appointment of a deputy and does not prescribe any particular procedure for the "opportunity to be heard by the sheriff." *Id.* Plaintiff also concedes that in *Nicastle v. Adams County Sheriff's Office*, No. 10-cv-00816-REB-KMT, 2011 WL 1598062, at *5 (D. Colo. Apr. 28, 2011), District Judge Robert E. Blackburn found,

> this statute does not create a property interest in a particular rank held by a sheriff's employee. First, the statute addresses only revocation of an appointment as a deputy, as opposed to a particular rank held by a deputy. More important, the statute provides procedural detail but does not place substantive restrictions on the discretion of a sheriff to revoke an appointment or to demote an employee.

*Id.*

Nevertheless, Plaintiff directs the court to the title of the 2006 amendment to the statute, House Bill 06-118. (*See* Resp. Mot. One, Attach. 1.) The House Bill is titled, "CONCERNING COUNTY SHERIFFS, AND, IN CONNECTION THEREWITH, LIMITING THE POWER OF A SHERIFF TO REVOKE THE APPOINTMENT OF A DEPUTY *AT WILL* AND MODIFYING THE LIABILITY OF A SHERIFF FOR CERTAIN ACTS" (*Id.* [emphasis added].) Plaintiff argues that because the legislature, in the House Bill title, substituted "at his pleasure" with at "at will," the intent of the legislature was to

make a substantive change, and that the "at will" language has not been addressed by the courts.[2] (Resp. Mot. One at 7.) The court cannot comprehend how this synonymous substitution in the title of the House Bill changes the substance or the body of the amendment. Moreover, Plaintiff's argument that the "at will" language has not been addressed is belied by the decisions in *McLallen* and *Nicastle*, which addressed the statute in relation to claims brought by at will employees for denial of due process in violation of the Fourteenth Amendment. *See McLallen*, 2012 WL 502697, at *3–4; *Nicastle*, 2011 WL 1598062, at *5.

Applying the reasoning used by the *McLallen* and *Nicastle* courts, this court also finds that Colo. Rev. Stat. § 30-10-506 does not create a cognizable property interest. Therefore, Plaintiff's due process claim based on his alleged property interest is properly dismissed.

### B.     *Liberty Interest*

Defendants also argue that Plaintiff has failed to establish a liberty right in employment as a deputy sheriff. (Mot. Two at 2–6.) A liberty interest in employment concerns an employee's "good name and reputation as it relate[s] to his employment." *Darr*, 495 F.3d at 1255. Therefore, an actionable claim arises if a government employer publishes false statements that "impugn the employee's good name, reputation, honor, or integrity" either "in the course of terminating the employee" or under circumstances that would "foreclose other employment opportunities." *Id.*

---

[2] Plaintiff specifically points to the Colorado Court of Appeals' opinion in *Seeley v. Board of County Commissioners for La Plata County, Colorado*, 771 P.2d 21 (Colo. App. 1989), *aff'd*, 791 P.2d 696 (Colo. 1990), which addressed the statute as it existed prior to the 2006 amendment. *Id.* at 22.

Plaintiff concedes he "has not yet asserted a claim for due process [ ] violation of a liberty interest based upon injury to his reputation."[3] (Resp. Mot. One at 3 n.2; *see also* Resp. Mot. Two at 4 n.3.) As such, his due process claim based on liberty interest is properly dismissed.

### *2.     Official Capacity Claims*

Defendants also move to dismiss Plaintiff's official capacity claims against Defendants Board of County Commissioners ("Board"), Sheriff's Office, Smith, and Nelson. (Mot. One at 7–9.)

#### *A.     Defendants Smith and Nelson*

The Supreme Court has recognized that "[t]here is no longer a need to bring official-capacity actions against local government officials [because] local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit

---

[3]Plaintiff argues in his response that his liberty claim is related to his allegations that his freedom of speech was violated because he was fired based on his political beliefs or political affiliations. (*See* Resp. Mot. Two at 4.) The Tenth Circuit has recognized a claim for political discrimination in situations when a governmental employer allegedly discriminates on the basis of an employee's political affiliation. *See Gann v. Cline*, 519 F.3d 1090 (10th Cir. 2008); *Snyder v. City of Moab*, 354 F.3d 1179 (10th Cir. 2003). To establish such a claim, the aggrieved employee must show that "(1) political affiliation and/or beliefs were 'substantial' or 'motivating' factors behind [his] dismissal[ ]; and (2)[the] . . . employment position[ ] did not require political allegiance." *Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999). This type of claim is available for terminations on the basis of protected First Amendment activity only. Plaintiff has asserted two independent First Amendment claims which the defendants have not moved to dismiss.

against the entity." *Kentucky*, 473 U.S at 166 (citation omitted). Because official-capacity suits are simply "another way of pleading an action against an entity of which an officer is a agent," the official capacity claims against Defendants Smith and Nelson are really claims against the Board, as discussed *infra. See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 n.55 (1978). Thus, the official-capacity claims against Defendants Smith and Nelson are properly dismissed as redundant. *See Stump v. Gates*, 777 F. Supp. 808, 816 n.3 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993).

### B.   *Defendants Board and LCSO*

Liability under § 1983 cannot be based on a *respondeat superior* theory. *Monell*, 436 U.S. at 691. Liability does not attach to the governmental entity pursuant to § 1983 for the acts of its employees unless the Plaintiff can show: 1) that a municipal employee committed a constitutional violation; and 2) a municipal policy or custom was the moving force behind the constitutional deprivation. *Myers v. Oklahoma Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998).

#### 1.   *Constitutional Violation*

The court has determined that Plaintiff's Claim One for Fourteenth Amendment claims are properly dismissed for failure to state a claim upon which relief can be granted. Thus, Plaintiff has failed to make a requisite showing of an underlying constitutional violation as to Claim One. However, because the motion to dismiss is not directed at Plaintiff's Second and Third Claims for Relief, the court has not made any determination as to whether Plaintiff has stated claims for underlying constitutional violations as to those claims. Thus, the court must

address whether the plaintiff has alleged that a municipal policy or custom was the moving force behind the violations alleged in the Second and Third Claims for Relief. *Myers*, 151 F.3d at 1317.

### 2. *Policy or Custom as Moving Force*

"Municipalities can be held liable only when an injury was inflicted by execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Cannon v. City and Cnty. of Denver*, 998 F.2d 867, 877 (1993) (citations omitted). The Supreme Court has noted that "locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403–04 (1997) (citations omitted). A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal policy or custom that caused the plaintiff's injury. *Brown*, 520 U.S. at 403. Specifically, a plaintiff must show 1) the existence of a municipal custom or policy and 2) a direct causal link between the custom or policy and the violation alleged. *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). Moreover, the plaintiff must demonstrate that "through its deliberate conduct, the municipality was the moving force behind the constitutional violation." *Brown*, 520 U.S. at 404.

Here, Plaintiff alleges he was "notified in person by [Defendant] Nelson . . . that he was being terminated for violations of LCSO policies involving his duty of loyalty with respect to his communications with the Town of Wellington and for his support of the initiative to promote a

local police force in the town of Wellington." (SAC, ¶ 27.) Plaintiff alleges Defendant Nelson "relied upon two policies of the Larimer County Sheriff's Office, identified as Rule 1.7 and Rule 1.8 of the 'Rules of Conduct' . . . ." (*Id.*, ¶ 28.) Plaintiff alleges the defendants "mis-used the overbroad LCSO policies . . . as a pretext to punish[ ] Plaintiff." (*Id.*, ¶¶ 49, 55.) Finally, Plaintiff alleges that the defendants' misuse of the policies "deprived Plaintiff of his clearly established, constitutional protected right[s]" to free speech and association. (*Id.*, ¶¶ 50, 56.) Thus, because Plaintiff has pleaded the the existence of a municipal custom or policy and a direct causal link between the policy and the violations alleged, the court finds that these allegations are sufficient to state a claim for municipal liability under § 1983. *See Graves*, 450 F.3d 1215, 1218.

### *3. Board Versus LCSO as Proper Defendant*

Finally, the Defendants argue that only one "entity" – either the Board of County Commissioners or the Larimer County Sheriff's Department – is the proper party defendant. (Mot. One at 9.) Plaintiff does not disagree. (*See* Resp. Mot. One at 11–13.) However, both defendants invite the court to make the choice of proper entity defendant. (*See* Mot. One at 9; Resp. Mot. One at 13.)

This court, in *Vuolo v. Garfield County Sheriffs*, 09–cv–01476–ZLW–KMT, 2009 WL 4250103, at *7 (D. Colo. Nov. 23, 2009), analyzed this same issue as follows:

> [A] separate identity as a body politic or corporate is essential to § 1983 'person' status." *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991) (citing *Monell*, 436 U.S. at 690). "Under Colorado law municipalities and counties, not their various subsidiary departments, exist as 'bodies corporate and politic' empowered to 'sue and be sued.' " *Id.* (citing Colo.Rev.Stat. § 31–15–101(1)(a), (b) and §

> 30–11–101(1)(a)). As one such subsidiary department, police departments are not "persons" subject to suit under section 1983. *Id.* ("[p]olice departments ... [do not] have the capacity to commit acts depriving individuals of civil rights . . . .").

*Id.* Here, just as in *Vuolo*, the court finds that Defendant LCSD is a subsidiary department of its county municipality.

Defendants encourage the court to find that the Sheriff's Office is the proper defendant. (Mot. One at 9.) However, the cases cited by the defendants distinguished between sheriffs and boards of county commissioners for purposes of supervisory liability in a common law tort action and an ADA discrimination case. *See Tunget v. Bd. of Cnty. Comm'rs of Delta Cnty.*, 992 P.2d 650, 652 (Colo. App. 1999) (finding sheriff the appropriate governing entity to deal with a tort claim asserted against a deputy sheriff); *Bristol v. Bd. of Cnty. Comm'rs of Clear Creek*, 312 F.3d 1213, 1219 (10th Cir. 2002) (finding sheriff the appropriate defendant in ADA case). In the other case cited by the defendants, the court dismissed the county defendant only because of the plaintiffs' failure to name the Board of County Commissioners rather than the county itself. *See Ferris v. Jefferson Cnty.*, Civil Action No. 07-cv-02215-MJW-REB, 2008 WL 5101240, at *6 (D. Colo. Nov. 26, 2008).

For municipal liability claims under § 1983, however, the county is an appropriate defendant. *See Stump*, 777 F. Supp. at 816 ("Under Colorado law municipalities and counties, not their various subsidiary departments, exist as bodies corporate and politic empowered to sue and be sued."); *see* Colo. Rev. Stat. § 30–11–101. Thus, the Larimer County Sheriff' Department is properly dismissed as a defendant.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that "Defendants' Motion to Dismiss First Claim for Relief—Liberty Interest Claim Set Out in Plaintiff's Second Amended Complaint" (Doc. No. 17), which incorporated by reference " and the incorporated Defendants' "Motion to Dismiss First Claim for Relief and Official Capacity Claims Against Defendants Board of County Commissioners, Smith, and Nelson." (Doc. No. 10) be GRANTED in part and DENIED in part as follows:

1. Plaintiff's First Claim for Relief, asserting a Fourteenth Amendment procedural due process claim, should be dismissed with prejudice for failure to state a claim upon which relief can be granted;

2. The official-capacity claims against Defendants Smith and Nelson should be dismissed with prejudice as redundant;

3. Defendants' Motion to Dismiss Plaintiff's municipal liability claims asserted in the Second and Third Claims for Relief should be denied; and

4. Defendant Larimer County, Colorado Sheriff's Department should be dismissed with prejudice as an improper party. The court further

**RECOMMENDS** that the District Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this recommendation would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). Thereafter, if Plaintiff files a notice of appeal he also must pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days of the court's final order in accordance with Fed. R. App. P. 24.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 8th day of February, 2013.

BY THE COURT:

/s/ Kathleen M. Tafoya
Kathleen M. Tafoya
United States Magistrate Judge